HART et al. v. JOPLING.

(Court of Civil Appeals of Texas. Texarkana. April 11, 1912.)

1. REFORMATION OF INSTRUMENTS (§ 36*)—PLEADING—SUFFICIENCY.

A petition, setting out a contract by plaintiff to sell timber to defendants, seeking recovery of the agreed price, confirming all the terms of the agreement excepting a clause as to when payment should become due, as to which reformation was asked to express the true intention of the parties, and alleging that plaintiff was induced to sign through mistake, fraud, and misrepresentation as to such clause, stated a good cause of action as against general demurrer.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 141–146; Dec. Dig. § 36.*]

2. ATTACHMENT (§ 253*)—GROUNDS—RIGHT TO CONTROVERT.

The truth of the allegations of an affidavit for attachment cannot be controverted to abate the writ; defendant's remedy being on the bond.

[Ed. Note.—For other cases, see Attachment, Cent. Dig. §§ 900–925; Dec. Dig. § 253.*]

3. ATTACHMENT (§ 237*)—GROUNDS—RIGHT TO CONTROVERT.

The sureties on a bond in replevin of attached property cannot procure abatement of the attachment writ for any falsity in the affidavit for attachment.

[Ed. Note.—For other cases, see Attachment, Cent. Dig. §§ 815–827; Dec. Dig. § 237.*]

4. ATTACHMENT (§ 353*)—ABANDONMENT—EVIDENCE.

Judgment on a bond in replevin of attached property, reciting that, after the replevy, defendant in attachment appropriated the property to his own use, etc., shows that the attachment proceedings were not abandoned.

[Ed. Note.—For other cases, see Attachment, Cent. Dig. § 1306; Dec. Dig. § 353.*]

5. REFORMATION OF INSTRUMENTS (§ 25*)—RIGHT TO.

Plaintiff is not entitled to reformation of a timber sale contract as to the time when payment should fall due, where he was experienced in business affairs and signed after looking it over, with full opportunity to understand its contents.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 84–90; Dec. Dig. § 25.*]

6. APPEAL AND ERROR (§ 1175*)—DISPOSITION—RENDITION OF JUDGMENT.

Where the only controversy in a suit in which attachment was had was as to the time when defendant's debt to plaintiff accrued, error in entering judgment for plaintiff before the debt was due will not require that the cause be remanded, where the debt has since fallen due; judgment being properly rendered by the appellate court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4573–4587; Dec. Dig. § 1175.*]

Appeal from District Court, Shelby County; W. C. Buford, Judge.

Action by A. N. Jopling against A. H. Hart and others. Judgment for plaintiff, and defendants appeal. Reversed and rendered.

A. H. Hart and Robert Bogue purchased of appellee all the merchantable timber, hickory excepted, then growing on his three tracts of land consisting of 200 acres. After making deduction of 6½ acres for the run of a creek through the land there were by measurement 193½ acres covered by timber. The agreed sum payable for the timber was $200 cash and at the rate of 11 cents per railway cross-tie of 32 feet lineal measurement until the maximum sum of $7.50 per acre, or a total of $1,451.25, had been paid. It was agreed that the purchase price, except the sum of $200 cash, was to be paid by the purchasers "when the timber shall have been cut and removed from the land, provided that such payment shall in no event be delayed and postponed for a longer period than three years from the date of the sale." The date of the contract of sale in suit was December 31, 1908. Appellee brought suit against Hart and Bogue for the money owing him, and at the same time sued out a writ of attachment which was levied on certain lumber and ties of the defendants. The property attached was duly replevied by A. H. Hart. At the subsequent term of court the appellee amended his petition. The defendant Hart entered a demurrer to the amended petition, and answered by general denial and specially that under the terms of the agreement between the parties the deferred portion of the purchase price for the timber was not due and payable at the time of suit, and the action for such sum was premature. The real controversy arising in the trial was as to whether under the agreement the deferred purchase price was due and payable at the time of suit. The defendant Hart contended that the suit was premature because the written agreement in terms provided that the unpaid purchase

price should not be due and payable until all the timber was cut and removed from the land, or not later than the date of the expiration of the contract of sale, which was December 31, 1911, and that neither condition of payment was existing at the time. It was the contention of the appellee that it was the true agreement of the parties that the deferred purchase money for the timber was payable as the timber from each acre was cut and removed, and that the stipulation in issue failed to express and execute the true intention and agreement of the parties, and was induced to be signed through mistake, fraud, and misrepresentation. The case was submitted to the jury on the one special issue for finding of whether the stipulation in writing was induced by fraud and misrepresentations of the purchasers. The jury answered that it was. The court entered final judgment for appellee against both purchasers of the timber as a joint undertaking, for the amount of unpaid purchase money, and against the sureties on the replevin bond of the defendant Hart upon the finding by him that the attached property had been sold and disposed of by Hart to his own use after the replevy. The defendant Hart and the sureties on his replevin bond each appeal from the judgment. The defendant Bogue does not appeal.

It is undisputed that by the terms of the contract of sale in evidence the purchasers' right to cut and remove the timber from the land would expire on December 31, 1911, and all timber remaining on the land after that date was to revert to and remain the property of the appellee. The appellee proved by witnesses who cut timber off the land and who hauled it and who stacked lumber manufactured from the timber that appellant Hart had under the contract cut and removed and manufactured into lumber and ties over 500,000 feet of timber from the land, which was proven to be more than a sufficient quantity to amount to the maximum value of $7.50 per acre for the timber at the rate of 11 cents per tie, which was the agreed maximum price payable per acre for the timber. The appellant Hart testified that at the time of the trial there was approximately 150,000 or 200,000 feet of timber remaining uncut on the land, but he at the same time admitted that between 75 and 80 per cent. of all the timber had already been cut and removed by him from the land. He further admits that he will owe appellee for the timber already cut the sum of $1,251.25, which is the amount appellee claims is owing him. Appellant Hart does not deny nor offer any evidence conflicting with the evidence given by appellee's witnesses as to the quantity of timber cut and removed from the land by him.

The judgment of the court involves a finding by him that the purchasers had cut and removed from the land at the time of trial a sufficient quantity of timber to be of the maximum value of $7.50 per acre at the rate of 11 cents per tie. This finding of fact is not complained of below or on appeal.

King & King, of Nacogdoches, for appellants. D. M. Short & Sons, of Center, for appellee.

LEVY, J. (after stating the facts as above). [1] By his first two assignments the appellant Hart contends that there was error in overruling a general demurrer to the amended petition of appellee, for the reasons (1) that the averments in the petition are tantamount to a plea of non est factum and the plea is not supported by an affidavit; and (2) that appellee is not entitled to avail himself of a right of action on an executory contract partly performed by seeking confirmation of a part of the contract and disaffirmance of a part of it. The court did not err in overruling the general demurrer. The averments in the petition would not reasonably warrant the construction that appellee was denying the execution of the contract of sale or of contending that he had no intention of executing the contract, or that he was deceived and defrauded by the purchasers into signing another and altogether different paper from the one he intended to execute, nor as asking that the paper he sues on be canceled. The petition sets out the contract and exhibits a copy, and expressly confirms all its terms with the exception of the particular clause therein as to the time when the deferred payment should be due and payable, and as to this particular clause appearing therein the appellee was asking equitable relief by reformation. In this latter respect the petition alleged that the true term of agreement was that the deferred payment be due and payable as the timber on each acre was cut and removed therefrom, and that by the fraud and misrepresentations of the purchasers, and without appellee's knowledge or consent, this term of agreement was misstated to be when all the timber should be cut or removed from the land, or not until December 31, 1911. Under known equitable principles, this entitled appellee to have inquiry into the truth of the allegations, and, if they were sustained by proof, to equitable relief against the particular misstatement fraudulently appearing in the instrument. Such being the character of the pleadings, the general demurrer was properly overruled.

[2, 3] The appellant Hart requested the court to submit for finding the question of whether when the affidavit for attachment was made he had disposed of his property in part with the intent to defraud his creditors. This fact was the ground upon which the writ of attachment was based. The refusal of the court to submit the finding is made the basis of an assignment. The appellant did not by any pleading seek damages for wrongfully suing out the attachment, but he

did by exception or motion seek to abate the writ upon the ground that the fact stated in the affidavit for attachment was false. The purpose of the finding was in order to seek to abate the writ of attachment, if the alleged fact in the affidavit upon which the writ of attachment was based was not true. In Gimbel v. Gomprecht, 89 Tex. 497, 35 S. W. 470, it was ruled that the truth of the allegations of the affidavit cannot be controverted for the purpose of abating the writ, but the defendant is left to a remedy upon the bond in attachment for damages when there is falsely alleged a fact upon which the writ of attachment is based. Neither could the sureties on the replevin bond predicate any right to abate the attachment writ on the ground of any falsity of fact alleged, as a defense to their liability on the replevin bond, for their liability does not arise from or depend upon the truth or falsity of the fact alleged in the affidavit for the issuance of the writ. Therefore the motion to abate the writ of attachment on the ground mentioned should not have been sustained, and the seventh, tenth, eleventh, twelfth, and thirteenth assignments are overruled.

[4] By the fourteenth assignment, the appellants, sureties on the replevin bond, contend that, as there was no order of sale or foreclosure of the attachment lien in the judgment as written, the attachment proceedings were thereby waived, and, in consequence, the rendition of any judgment against them as sureties on the replevin bond was erroneous. There is no contention that the pleadings of appellee abandoned any claim of liability on the replevin bond by reason of the attachment. As seen, the judgment expressly recites that property of the defendants "had been seized under a writ of attachment issued in this cause," and had been replevied by the defendants, and that, after the replevy, the defendant had appropriated all such property to his own use, and that the value of the property so appropriated exceeded the amount claimed by plaintiff. By such recitals it affirmatively appears that the attachment proceedings were not abandoned or waived in the judgment. The order of the court in respect to the attachment proceedings in legal effect operated to foreclose the attachment lien on the property, and at the same time to render judgment against the sureties on the replevin bond. The judgment on its face recites, among other things, "and it further appearing to the court that on the 3d day of January, 1911, the defendant Hart executed his replevy bond in the sum of $1,400, with W. Y. Garrison and G. F. Garrison as his sureties, payable to the plaintiff, conditioned as the law requires, and it further appearing to the court that the said defendant Hart had appropriated to his own use and benefit the property described in said replevy bond, which property was valued at the sum of $1,400 and which property had been seized under a writ of attachment issued in this cause, and it further appearing to the court that the value of said property so appropriated by the defendant Hart to his own use and benefit is in excess of the amount claimed by the plaintiff and costs of court, it is therefore adjudged and decreed by the court," etc. (Then follows a judgment for the amount against the sureties.) It was conclusively shown that Hart, after the replevy, sold the timber and ties, which was the property attached. There is a valid judgment against the sureties, and the assignment is overruled.

[5] It is further contended by the appellant Hart, under proper assignments, that there is no proof to support the allegations and the finding of the jury of fraud or misrepresentation in respect to the term of stipulation as to the time when the deferred payment should be due and payable. The only proof relied on by appellee to sustain the charge of fraud or imposition as to the clause in the written instrument in issue lay in his own evidence. He testified that Hart, one of the purchasers, asserted to him on the morning of the day that the instrument was signed that the instrument differed from the previous one only as to the description of the land and deduction of acreage for the run of the creek, and that, after Hart made such statement, the notary then proceeded to read over the instrument to him, and did not read out the clause in issue, and that he relied upon the statement of Hart and the reading by the notary. The notary and Hart deny the occurrence. Assuming for the moment that all the things as stated by appellee did occur, he still, under the further undisputed evidence, would not be entitled to a correction and reformation of the clause in issue. Appellee admits that he had experience in trading and in money transactions, and could read and write tolerably well, and that the instrument in suit was plainly typewritten. He does not appear under any physical or mental disability. He admits that after the statement by Hart, and the reading by the notary, "I did have the deed in my hand, and don't recollect how long I had it reading there in the road, but I was standing there in the road, and they were in the buggy, and I looked over the deed, and it is a typewritten deed, and I did and could read it, and I read it out." He further admits: "I did tell Mr. Hart, after I had read the deed, that I would be in town that afternoon, and probably would sign it if he would change the consideration from 8 to 11 cents per tie." Appellee admits that it was several hours after this conversation that he founds imposition occurred before he signed the contract. It is clear by appellee's own admissions that he had full and ample and unlimited opportunity to know and understand the contract he was signing, written, as he

says, plain enough for him to read; and no fraud or imposition upon him appears that he can justly complain of, for the reading of the instrument by him would have disclosed the previous falsities, if any, made or attempted to be made. It is the general and familiar rule that a person to whom representations are made has no right to rely upon them if the facts are within his observation, or if he has equal means of knowing the truth. As there was no sufficient proof of fraud or imposition, the appellee would not be entitled to have correction and reformation of the clause in issue, and would be remitted to the terms of the written contract which he sued on. Being remitted to the terms of the written contract, then it conclusively appears therefrom that appellee was not entitled to have final judgment at that term of court at which judgment was entered, without a stay of execution until the debt was due, for his debt sued for was proven not due.

[6] Therefore sustaining appellant's assignments, which we do, in respect to the insufficiency of the proof to have reformation of the clause in issue, is in effect to sustain his plea that the appellee was not entitled to have judgment entered at that term of court because the debt was not due. It being an attachment proceeding, the right to file the suit before the debt was due, existed. Article 189, R. S. Having the right to bring the suit before the debt was due, the bringing of the suit was not premature. It would only be the entry of the judgment at the time, and the manner in which it was done, that was premature. If the judgment as entered had provided a stay of execution of the same until the fixed time of the maturity of the debt, no injury would have resulted in the evidence to appellants, and no doubt this court would have to affirm the judgment, the debt at this time being due, and the maturity of the debt being the real issue between the parties. So, even though it were error, and it was, to enforce the payment of the debt sooner than the fixed time of agreed maturity, this was the only error, and there is no suggestion in the record or by assignment why this court should not now proceed on the record to render the proper judgment instead of remanding the same to the district court merely for the purpose of formally entering judgment herein, thus occasioning a delay in litigation that need not be. The only controversy in the record between the parties was as to the time when the debt was due and payable. By the written agreement of the parties in evidence the debt is now past due. It conclusively appears from the evidence in the record that the purchasers are owing the appellee the amount he sues for, and that he is entitled to recover the amount sued for against them and the sureties on the replevy bond. The pleadings authorize the judgment. There being no matter of fact or amount uncertain or issuable, and the debt being due, the power of this court to here render judgment on the proven facts and pleadings exists. The judgment below as to appellants will be reversed and here now rendered in favor of appellee against the appellants A. H. Hart and W. Y. Garrison and G. F. Garrison as sureties on his replevin bond for the sum of $1,251.25 and costs of the court below. The judgment against Robert Bogue, not being appealed from, will remain undisturbed. The costs of appeal will be taxed against appellee.

Reversed and rendered.